FILED
99 MAR 31 PM 3: 14
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

STEVE D. PUGH and )
JOYCE M. PUGH, )
 )
Plaintiffs, )
 )   CV-97-P-0425-S
-vs.- )
 )
TRIPMATE INSURANCE AGENCY, )
INC., MONUMENTAL LIFE INSURANCE )
CO., et al., )
 )
Defendants. )

ENTERED
MAR 31 1999

## MEMORANDUM OPINION

The remaining defendants in this case, Monumental Life Ins. Co. and TripMate Ins. Agency, Inc., filed this summary judgment motion on June 24, 1998. The court heard oral argument on the motion at the July 31, 1998 motion docket. As of July 31, 1998, the court took the motion under submission. After careful consideration of the motion, brief, and evidentiary submissions[2] presented, the court finds that the defendants' summary judgment motion is due to be granted.

---

[2]The plaintiff did not submit a brief or evidentiary submissions in opposition to the defendants' summary judgment motion. Under Fed. R. Civ. P. 56(e):

> when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The plaintiff did present oral argument on the motion at the July 31, 1998 motion docket.

## Facts[3]

Steve and Joyce Pugh purchased the first of two England vacation tour packages from Globus/Group Voayagers, Inc. ("Globus") in July 1996. Along with the first tour package, the plaintiffs purchased trip cancellation and trip interruption insurance underwritten by Monumental Insurance Co. ("Monumental") and administered by TripMate Insurance Agency ("TripMate"). Because the plaintiffs purchased the trip insurance at the same time they purchased their tour package, the couple was provided coverage for pre-existing medical conditions.[4] In addition, the insurance covered trip interruption and cancellation due to unexpected injury or sickness.

The Pughs received a description of coverage brochure along with their tour documents that described the terms of the insurance contract.[5] The brochure detailed the requirement that an insured seek medical attention to document a sickness causing the interruption or cancellation of the covered trip.[6] Although the Pughs had the opportunity to read the insurance brochure, they apparently failed to do so.

---

[3]The facts are viewed in the light most favorable to the non-moving party.

[4]Normally, the insurance contract contains an exclusion for pre-existing illnesses. However, if the insured purchases the insurance at the same time as the travel tickets, the pre-existing illness exclusion is waived. The pre-exiting condition provision also requires the insured to seek medical attention in order to establish inability to travel. The doctor must treat and disable the insured from travel.

[5]The plaintiffs are unable to locate the description of coverage brochures, although they acknowledge receiving them. They were, however, able to testify to the contents of the brochures.

[6]The policy states "Injury or Sickness must be, in the written opinion of a Physician, so disabling as to cause a Trip to be . . . interrupted . . . and must require the care and attendance by Physician at the place of occurrence."

The Pughs' first English tour was scheduled to begin on September 10, 1996. The Pughs were to leave Roanoke, Virginia, make a layover connection in Charlotte, North Carolina, and then board a transatlantic flight to London, England. The Pughs made the flight from Roanoke to Charlotte without any problems. However, while in the Charlotte airport, Mr. Pugh became ill. Mrs. Pugh allegedly informed British Airways of Mr. Pugh's problems but did not inform anyone else. Mr. Pugh did not seek treatment from a physician either in Charlotte or in Birmingham upon his return home. As a result of Mr. Pugh's illness, the Pughs were unable to continue with their trip.

On October 2, 1996, the Pughs submitted claims to TripMate for trip insurance benefits. On the claim form, the Mr. Pugh listed Dr. James V. Davis as the physician who treated him for the illness on September 10.[7] Dr. Davis also signed the Attending Physician Statement that accompanied the claim form. After receiving the claims information, TripMate contacted Dr. Davis concerning Mr. Pugh's alleged illness. Dr. Davis informed TripMate that Mr. Pugh had not sought medical treatment for the illness that cause the interruption of the tour to England. Based on this information, TripMate denied the Pughs claims because "Mr. Pugh did not seek medical treatment either in Charlotte at the time [plaintiffs] interrupted [their] trip or upon [their] return home" as required under the terms of the contract. Upon appeal, Monumental affirmed the denial of benefits on January 10, 1997.

The Pughs purchased a second tour package from Globus in September 1996. Once again, the Pughs purchased trip insurance from Monumental at the time they paid for the tour packages. As with the first trip, the Pughs received a description of coverage brochure that detailed the requirements for claiming benefits under the trip insurance policy. The second trip was to begin on

---

[7]The claim form states that Mr. Pugh's illness was caused by his underlying health problems. However, in his deposition, Mr. Pugh testified that he suffered from food poisoning at the Charlotte airport.

3

October 19, 1996. On October 16, three days before the Pughs were to scheduled to leave, Mr. Pugh once again became ill and the Pughs were unable to go on the second tour.[8] The Pughs did not see a physician for the October 16 illness.

The Pughs submitted claim forms to TripMate on October 22, 1996 for benefits under the insurance they purchased for the second tour. Dr. Davis once again signed the Attending Physician form attached to the Pugh's claim documents. TripMate requested Mr. Pugh's medical records for the period surrounding the October 16 incident to confirm that medical treatment was sought as required under the terms of the policy. Upon reviewing the medical records, TripMate determined that Mr. Pugh had not sought treatment for the illness that caused the cancellation of the second tour. As a result, in a January 10, 1997 letter, TripMate informed the Pughs that their claims for the second tour had been denied because "Mr. Pugh's condition did not require treatment by a physician when [plaintiffs] cancelled [their] trip." Globus partially reimbursed the Pughs, paying them approximately $2,523.00 for the second trip.[9] The Pughs did not appeal the partial denial of this second claim.

The Pughs filed this lawsuit on January 22, 1997 in the Circuit Court of Jefferson County, Alabama. The complaint included claims of bad faith, fraud/suppression, breach of contract, and negligence against numerous defendants.[10] After removal of this case to the Northern District of

---

[8] It is unclear exactly what type of illness Mr. Pugh suffered from on this occasion. The claim form indicates that Mr. Pugh was suffering from general bouts of weakness allegedly caused by several pre-existing conditions, including leukemia and gall bladder problems. Mr. Pugh did not seek medical attention in relation to these health problems.

[9] The information regarding the partial payment of benefits was taken from the plaintiffs' amended complaint. Neither the plaintiff or defendants have addressed this issue with regard to the summary judgment motion.

[10] The original defendants included: TripMate, Monumental, British Airways, American Express, Globus/Group Voyages, Inc. and Francis Smith, Inc./AAA Florida, Inc. The court

4

Alabama, Southern Division, the plaintiffs filed an amended complaint, essentially asserting the same claims. In response to a subpoena served on Dr. Davis by the defendants, Mr. Pugh's medical records were produced. The records reveal that Mr. Pugh did not seek any medical treatment between July 17, 1996 and December 11, 1996. Both of the alleged illnesses supposedly causing interruptions of the trips occurred during this time period.

## Analysis

I. Fraud/Supression

The plaintiffs' claims for fraud basically assert that the defendants "willfully and maliciously misrepresented to plaintiffs that the . . . vacation trips [sic] costs would be fully reimbursed to plaintiffs if illness forced cancellation." The plaintiffs also appear to assert a suppression claim by stating that the "[d]efendants . . .did willfully and intentionally conceal information from Plainitffs respecting terms and conditions of claims. . .."[11] In essence, the plaintiffs attempt to argue that the defendants did not inform them of the conditions precedent to recovering under the trip insurance contract. However, the plaintiffs acknowledge receiving the description of coverage brochure which clearly states the requirement that an insured seek medical attention to document the illness causing the interruption or cancellation of the covered trip.

---

dismissed with prejudice British Airways and American Express. Globus/Group Voyagers was dismissed without prejudice due to a choice of law clause. The American Motorists Association, (incorrectly referred to as Francis Smith, Inc./AAA Florida, Inc. in original complaint) was not properly served and the court, upon objection to the plaintiffs' attempt at joinder by the other defendants, dismissed the American Motorists Association from the case.

[11]The plaintiff identified Count I of the complaint as a claim for bad faith. However, the defendants briefed the suppression claim in the event that Count I may be construed as alleging claims for suppression against Monumental and TripMate.

5

In order for the plaintiffs to recover for fraud, the defendants must have made a false representation of a material fact. The plaintiffs assert that Monumental and TripMate represented that they would pay a valid claim, an assertion that these two companies do not dispute. Indeed, all insurers have "an obligation to pay all valid claims." United Ins. Co. of America v. Cope, 630 So. 2d 407, 411 (Ala. 1993). The representation made to the plaintiffs, therefore, cannot be false. While this situation may support a claim for breach of contract if the insurer fails to pay a valid claim, it does not constitute an actionable claim for fraud.

The suppression claim is likewise due to be dismissed. Assuming the plaintiffs intended to assert a claim for suppression, the claim is without merit. The plaintiffs assert that the defendants concealed information regarding the terms and conditions of payment for claims, yet the plaintiffs acknowledge receiving the written documents detailing such terms and conditions. As a matter of law, there can be no fraud or suppression claims where there is evidence that written documents disclosing the truth of the matter allegedly suppressed or orally misrepresented were made available to the plaintiff. See Richardson v. Liberty Nat'l Life Ins. Co, No. 2970206, 1998 WL 151641, at *3 (Ala. Civ. App. Apr. 3, 1998). The plaintiffs' claims for fraud and suppression are due to be dismissed.

## II. Bad Faith

The plaintiffs make two claims for bad faith. The first of these claims asserts that the defendants denied their claims in bad faith. However, a condition precedent to payment of the claims was the submission of documentation showing that the insured sought medical attention for the sickness that caused the trip interruption or cancellation. Monumental asserts that it denied the

6

benefits as a result of the plaintiffs' failure to present such documentation.[12] The plaintiffs have presented no evidence to show that they complied with the terms of the contract of that Monumental denied their claim for any reason other than failure to comply with the condition precedent as stated in the description of coverage brochure. The defendants' motion for summary judgment as to this claim is due to be granted. No reasonable jury could find otherwise.

The second claim centers on the allegation that the defendants "had full knowledge of the fact that Mr. Pugh was ill in the terminal of Charlotte, NC and did nothing to aid him." Although there are three types of bad faith causes of action recognized in Alabama, including bad faith refusal to pay, bad faith failure to defend, and bad faith failure to settle, the plaintiffs' bad faith claim here does not fit into any of these categories. Because Count II of the plaintiffs' complaint presents no cognizable theory of recovery under Alabama law, the defendants are entitled to summary judgment.

III. Negligence

The plaintiffs assert that the defendants were negligent "in failing at date of purchase to advise the Plaintiffs of stipulations or requirements for disability due to pre-existing conditions . . .."[13] The plaintiffs also assert in Count VI of their complaint that they were advised of the need to purchase the insurance at the time they bought their tickets for the tour in order to be covered for pre-existing

---

[12] Because it is not a party to the insurance contract, TripMate cannot be held liable for a bad faith denial of the plaintiffs' claims. See Pate v. Rollison Logging Equip., Inc., 628 So. 2d 337 (Ala. 1993).

[13] The complaint also includes a claim for negligence in Count V. This count, however, appears to apply only to a dismissed defendant, British Airways, as the complaint states that the defendants were negligent in "failing to offer any medical aid by summoning a physician or other medical attention when Plaintiff became ill and the Charlotte, N.C. airport." Because neither Monumental or TripMate were present at the airport or in any way obligated to provide such medical aid, and because the only potentially liable party has been dismissed, the court finds that the defendants' summary judgment motion is due to be granted as to this claim.

7

conditions. Further, the plaintiffs admit that they received the description of benefits brochures that explained the terms of the coverage on both occasions but did not read them. Based on this evidence and the fact that the plaintiffs' claims were denied for not supplying the proper documentation of illness rather than for reasons related to any pre-exiting conditions, the defendants' motion is due to be granted on this claim.

IV. Breach of Contract

The Pughs allege that the defendants breached the two insurance contracts by denying their claims on the basis of the pre-existing condition provision. However, there is no evidence that the defendants denied the Pughs' claims because of the pre-existing condition exclusion. In fact, the defendants acknowledge that the Pughs' waived the pre-existing condition exclusion because they purchased their trip insurance at the same time they bought their trip tickets. The basis for denying the Pughs' claims was their failure to abide by the terms of the contract. Before paying the claims, the defendants require that insureds submit medical documentation of the illness that caused a interruption or cancellation of the trip. Although the Pughs claim that such a condition precedent is "arbitrary and unreasonable," the court finds that the submission of medical documents in support of a claim is legitimate requirement and that the Pughs simply failed to comply with terms of the contract. The breach of contract claim is due to be dismissed.

## Conclusion

For the foregoing reasons, the court finds that there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law. The defendants' summary judgment motion is due to be granted in full.

8

Date: _March 31_, 1999.

_____
Chief Judge Sam C. Pointer, Jr.

Service List:
    Vince Low
    Bert S. Nettles
    Brennan C. Ohme

9